Willie Arthur MILTON, Appellant,

v.

The STATE of Texas, Appellee.

No. 53332.

Court of Criminal Appeals of Texas.

April 13, 1977.

 

James H. Kreimeyer, Belton, for appellant.

Joe Carroll, Dist. Atty., and Al W. Schorre, Jr., Asst. Dist. Atty., Belton, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for possession of heroin. Punishment was assessed by the jury at twenty (20) years' imprisonment and a fine of $10,000.

In his sole ground of error appellant contends the "court erred in overruling appellant's objection to the admission of the alleged heroin as evidence as it was seized as a result of an illegal arrest under Article 14.04, Texas Code of Criminal Procedure."

The record shows that on the evening of November 22, 1975 Detective Spriggs of the Killeen Police Department received information from a known and reliable informer who had previously given information to the police about narcotic violations. The informer told Spriggs that appellant had heroin on his person packaged in tinfoil, that he (informer) had personally observed the heroin in appellant's possession within the last 24 hours, and that he was familiar with heroin and the instruments used to inject heroin. He said appellant would be located in the Yellow Cab Cafe in Killeen. Spriggs had seen appellant prior to the date in question. At approximately 11:10 p. m. on November 22, 1975, Spriggs and Officers Tampio and Smith set up a surveillance of the cafe. Shortly thereafter, the appellant walked up the street and stood in the doorway of the cafe. Several minutes later a marked patrol car came up the street, and upon observing the same, the appellant entered the cafe quickly. Spriggs went to the rear door because ". . . it is very easy to just run out the back door and elude officers." The officers entered the cafe and detained the appellant. Spriggs rejoined them, and as they were escorting the appellant outside the cafe, he asked why he was

being detained and Spriggs told him they had information he was in possession of heroin. At this point appellant reached his right hand into his right jacket pocket. Spriggs grabbed his hand to prevent any narcotics from being removed and destroyed and for the officers' "self-protection." Appellant was frisked, and a matchbox containing four tinfoils of a substance, later shown to be heroin, was found in the pocket into which appellant had reached. An ounce of what was later shown to have been heroin was in the left pocket of the jacket under his top jacket. A syringe, needle and plunger were also discovered. Appellant's arms bore track marks.

■ The United States Supreme Court only recently held that the federal constitution does not require a showing of exigent circumstances for a felony arrest made in a public place which is based on probable cause. *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). See also *United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976). In *Watson* the Court wrote:

"Law enforcement officers may find it wise to seek arrest warrants where practicable to do so . . . But we decline to transform this judicial preference into a constitutional rule when the judgment of the Nation and Congress has for so long been to authorize warrantless public arrests on probable cause rather than to encumber criminal prosecutions with endless litigation with respect to the existence of exigent circumstances, whether it was practicable to get a warrant, whether the suspect was about to flee, and the like."

■ Despite these decisions under our dual system of government, it is state law and not federal law that governs the legality of a state arrest so long as that law does not violate federal constitutional protections against unreasonable searches and seizures. *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). The states are free to impose greater or additional restrictions on police conduct than are required by the federal constitution if

its citizens either by their Constitution or their Legislature so determine. *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *Cooper v. California*, 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L.Ed.2d 730 (1967); *Sibron v. New York*, 392 U.S. 40, 60–61, 88 S.Ct. 1889, 1901–1902, 20 L.Ed.2d 917 (1968). See also *People v. Hoinville*, 553 P.2d 777 (Colo.1976).

■ Thus appellant relies upon Article 14.04, Vernon's Ann.C.C.P., which provides:

"Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused."

Unquestionably this state statute imposes greater restrictions on peace officers than does the federal constitution as interpreted by the United States Supreme Court.

Appellant urges first that there is no showing that the police officers involved could not have secured a warrant, and that there was no information conveyed to the officers that the appellant was about to escape. This, he contends, would prevent a warrantless arrest for a felony under Article 14.04, supra.

The record on the sole question presented to this court was not as well developed as it might have been. In *Wood v. State*, 515 S.W.2d 300 (Tex.Cr.App.1974), it was written:

"The record relating to the search and seizure was not developed as well as it might have been, which always increases the burden upon the appellate court in passing on the grounds of error presented. Cf. *Keah v. State*, 508 S.W.2d 836 (Tex.Cr.App.1974)."

There was no evidence as to the lack of availability of magistrates or even the officer's opinion that a warrant could not be obtained. The only evidence bearing upon the subject is the fact the "tip" was received on the evening of Saturday, November 22, 1975 and that about 11:10 p. m. a

surveillance was set up. The time lapse between the "tip" and the surbeillance was not elicited. While normally magistrates may not be available on weekends at such hours, this was not established. Further, there was no showing that the officers had received information that appellant was about to escape. The only evidence bearing on escape was the fact that Officer Spriggs feared that when the appellant entered the cafe upon the approach of the patrol car the appellant would leave by the rear door.

We need not, however, determine whether the requirements of Article 14.04, supra, have been met.

■ Police officers are not required to shrug their shoulders and permit crime to occur or a criminal to escape. *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Baity v. State,* 455 S.W.2d 305 (Tex.Cr.App.1970), cert. den. 400 U.S. 918, 91 S.Ct. 180, 27 L.Ed.2d 158. Circumstances short of probable cause for arrest may justify temporary detention for the purposes of investigation since an investigation is considered to be a lesser intrusion upon the personal security. *Leighton v. State,* 544 S.W.2d 394 (Tex.Cr.App.1976); *Ablon v. State,* 537 S.W.2d 267 (Tex.Cr.App. 1976); *Mann v. State,* 525 S.W.2d 174 (Tex. Cr.App.1975); *Hernandez v. State,* 523 S.W.2d 410 (Tex.Cr.App.1975); *Borner v. State,* 521 S.W.2d 852 (Tex.Cr.App.1975); *Wood v. State,* supra; *Baity v. State,* supra; *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Adams v. Williams,* supra. The detention is justified if the law enforcement officer has specific, articulable facts, which in light of his experience and general knowledge, together with rational inferences from those facts would reasonably warrant the intrusion on the freedom of the citizen stopped for further investigation. *Terry v. Ohio,* supra; *Ablon v. State,* supra; *Mann v. State,* supra; *Hernandez v. State,* supra.

■ Reasonable cause for an investigative stop can be based on information supplied by another person as "the subtleties of the hearsay rule should not thwart an ap-

propriate police response." *Adams v. Williams,* supra.

■ Further, *Terry v. Ohio,* supra, teaches us that:

"Where a police officer observes unusual conduct which leads reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him."

In *Terry* the Court also wrote:

"The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."

See also *Cox v. State,* 442 S.W.2d 696 (Tex. Cr.App.1969); *Ablon v. State,* supra.

■ In the instant case Officer Spriggs had received information from an informer, who had given information to the police in the past about narcotic violations and whom he considered reliable, that appellant had on his person heroin. The source of the informer's information was his personal observation within the last 24 hours. He described how the heroin was packaged and stated he was familiar with heroin, etc. He stated the appellant could be located at the Yellow Cab Cafe. Spriggs had previously seen the appellant. Within five minutes after Spriggs and his fellow officers had set up a surveillance at the cafe appellant was observed walking toward the cafe. At this point it was clear that the informer's report was not fabricated. When the appellant, while standing in the cafe's doorway, appeared to observe a marked patrol car turn

the corner, he immediately entered the cafe as if to avoid detection. At that point the officers moved. Spriggs went to the cafe's rear door to prevent escape and the other officers entered the cafe. The appellant was detained inside the cafe and moved outside the cafe. There he asked why he was being detained and was told by Spriggs they had information he was in possession of heroin. At this news appellant stuck his hand in his right jacket pocket. Spriggs grabbed appellant's hand for the officers' "self-protection" and to prevent any narcotics from being removed and destroyed. A frisk followed which revealed a matchbox in the jacket pocket into which appellant had reached. It contained heroin in tinfoils. Upon discovery of this substance, the appellant was then searched, which search revealed other heroin, a syringe, needle, etc., on appellant's person.

When the appellant entered the cafe, the officers had the specific, articulable facts which warranted an investigatory stop. The appellant was detained inside the cafe and moved outside the cafe as the defendant was moved from the yard to the squad car in *Ablon v. State,* supra, during an investigatory stop. When informed, upon his inquiry, that the officers had information he possessed heroin, the appellant reached into his jacket pocket. Clearly the officers were justified at this time in frisking the appellant for self-protection. The first heroin thus found was admissible as the result of a frisk of the jacket during an investigatory stop. Upon the discovery of heroin, circumstances had clearly ripened into probable cause for arrest and the officers had the right to search incident to that valid arrest, for the officers had witnessed a crime being committed in their presence. Article 14.01, Vernon's Ann.C.C.P.; *Jones v. State,* 493 S.W.2d 933 (Tex.Cr.App.1973); *Lerma v. State,* 491 S.W.2d 152 (Tex.Cr.App.1973); *Legall v. State,* 463 S.W.2d 731 (Tex.Cr.App.1971). The search that followed the discovery of the first heroin re-

vealed an ounce of heroin, a syringe, needle, etc. These items were admissible as a result of the search incident to the legal arrest.

We need not determine if under the circumstances the heroin and other items were also admissible under the *Draper* line of cases [*Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959)]. See also *Almendarez v. State,* 460 S.W.2d 921 (Tex.Cr.App.1970); *Gonzales v. State,* 467 S.W.2d 454 (Tex.Cr.App.1971); *Gomez v. State,* 470 S.W.2d 871 (Tex.Cr.App.1971); *Mendoza v. State,* 492 S.W.2d 489 (Tex.Cr.App.1973). Likewise, we need not determine if Article 14.03, Vernon's Ann.C.C.P., as amended,[1] was also applicable.

The ground of error is overruled.

The judgment is affirmed.

ROBERTS and ODOM, JJ., concur in the results.

PHILLIPS, Judge, dissenting.

Though it is recognized that the federal constitution permits a public arrest upon probable cause without proof of exigent circumstances, *U. S. v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598, the State of Texas has the power to require by law the existence of exigency as a prerequisite to *arrest upon representations of a credible person.* *Olson v. State,* Tex.Cr.App., 484 S.W.2d 756; *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570. The Legislature of Texas has elected to establish said requirement by its enactment of Art. 14.04, V.A.C.C.P., which provides as follows:

> "Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused."

---

1. Article 14.03, supra, provides:

   "Any peace officer may arrest, without warrant, persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace, or threaten, or are about to commit some offense against the laws."

There was no evidence as to lack of availability of magistrates or even the officer's opinion that a warrant could not be obtained. The only evidence bearing upon the subject is the fact that a tip from a credible informant that appellant had heroin on his person packaged in tinfoil observed by informant within the last 24 hours was received on the evening of Saturday, November 22, 1975, and that about 11:10 p. m. a surveillance was set up. The time lapse between the "tip" and the surveillance was not elicited. While normally magistrates may not be available on weekends at such hours, this was not established. Further, there was no showing that the officers had received information that appellant was about to escape. The only evidence bearing on escape was the fact that Officer Spriggs feared that when he entered the cafe upon approach of the patrol car the appellant would leave by the rear door.

Obviously, the State clearly failed to show that the offender was about to escape so that there was no time to procure a warrant and therefore the State failed to meet the requirements of Art. 14.04, supra, for a lawful seizure of appellant's person.

Art. 14.03, V.A.C.C.P., as amended, provides as follows:

"Any peace officer may arrest, without warrant, persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace, or threaten, or are about to commit some offense against the laws."

To justify a warrantless arrest under said statute, there must be a showing that (1) appellant was found in a suspicious place and (2) that he was found under circumstances which reasonably show him to have been guilty of some felony or breach of the peace or threatening or about to commit some offense. Neither of said requirements is shown by the record in this case.

The majority contends that the arrest and incidental search of appellant was justified under the doctrine of "temporary detention for the purposes of investigation" as pronounced in *Terry v. Ohio*, 396 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612; *Ablon v. State*, Tex.Cr.App., 537 S.W.2d 267; *Leighton v. State*, Tex.Cr. App., 544 S.W.2d 394. The purpose of a temporary detention is to permit a reasonably motivated officer to procure information or an explanation as to suspicious circumstances or conduct without the full seizure of the person. This may be done when the existing information of the officer falls short of probable cause to effect an arrest or full seizure of one's person. *Terry v. Ohio*, supra; *Adams v. Williams*, supra; and *Ablon v. State*, supra. The purpose of the seizure in this case is not shown to have been a temporary detention to procure information or an explanation as to suspicious conduct or circumstances which had been brought to the attention of the officers. The seizure herein was simply for the purpose of determining whether the appellant was in possession of contraband in accordance with the representation of a purportedly credible person. This being so, Art. 14.04, supra, prohibits said warrantless seizure of appellant's person since there was no showing that appellant was about to escape so there was no time to procure a warrant. *Lowery v. State*, Tex.Cr.App., 499 S.W.2d 160; *Honeycutt v. State*, Tex. Cr.App., 499 S.W.2d 662. Said Art. 14.04, supra, contemplates that we look to the *time of the making of the representation* to the peace officer by a credible person and determine if *at that time* the offender was then about to escape so that there was no time to procure a warrant. The record here merely shows that the representation was made to the officer *sometime* on the evening of November 22, 1975, and that at about 11:10 p. m. a surveillance was set up at a cafe where appellant was expected to be. Said seizure of appellant's person having been unlawful, the subsequent search of his person, which was the actual purpose of the arrest, cannot be justified by the unrealistic and thin argument that as he was being escorted out of a public place wherein the officers had seized his person he reached one hand into his jacket pocket.

Actually, the reactions through fear, humiliation and indignancy of an innocent person upon being seized in a public place by officers would be reasonably expected to be more abnormal, unusual and unexplainable than that of the hardened criminal. Said arrest and subsequent search were unlawful and admission of the evidence obtained thereby is specifically prohibited by Art. 38.23, V.A.C.C.P.

For the reasons stated, I respectfully dissent.